No. 23-80074

# In the United States Court of Appeals for the Ninth Circuit

ZUFFA, LLC,
D/B/A ULTIMATE FIGHTING CHAMPIONSHIP AND UFC,
PETITIONER-DEFENDANT

*v.*

CUNG LE, ET AL.,
RESPONDENTS-PLAINTIFFS

*ON PETITION FOR PERMISSION TO APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA (CIV. NO. 15-1045) (THE HONORABLE RICHARD F. BOULWARE, J.)*

**REPLY OF PETITIONER IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL FROM ORDER GRANTING CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)**

GREGORY G. GARRE
CHRISTINE C. SMITH
LATHAM & WATKINS LLP
  *555 Eleventh Street, N.W., Suite 1000*
  *Washington, DC 20004*

CHRISTOPHER S. YATES
AARON T. CHIU
LATHAM & WATKINS LLP
  *505 Montgomery Street, Suite 2000*
  *San Francisco, CA 94111*

SAMIR DEGER-SEN
LATHAM & WATKINS LLP
  *1271 Avenue of the Americas*
  *New York, NY 10020*

J. COLBY WILLIAMS
CAMPBELL & WILLIAMS
  *710 South Seventh Street*
  *Las Vegas, NV 89101*

KANNON K. SHANMUGAM
WILLIAM A. ISAACSON
BRIAN M. LIPSHUTZ
KATHERINE FANG
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

DANIELLE J. MARRYSHOW
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

# TABLE OF CONTENTS

Page

Introduction ..................................................................................................1

Argument .....................................................................................................3

    I.    The district court erroneously certified a class based on a novel 'wage-share' theory that does not show common injury ...................................................................3

        A.    Plaintiffs have not presented a common method for demonstrating individual antitrust impact .....................3

        B.    Plaintiffs' model cannot distinguish between the impact of procompetitive and anticompetitive conduct ........7

    II.    The district court erroneously certified a class based on a model that assumes common impact .........................................8

    III.    The decision below suffers from a similar flaw as the certification decision in *Google Play Store* ....................................10

    IV.    The questions presented are exceptionally important and warrant immediate review ............................................................11

Conclusion .................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Chamberlan* v. *Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ...........................3

*In re Google Play Store Antitrust Litigation*,
    MDL No. 21-2981, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) .................10

*In re NCAA I-A Walk-On Football Players Litigation*,
    Civ. No. 04-1254, 2006 WL 1207915 (W.D. Wash. May 3, 2006) ...................4

*Johnson* v. *Arizona Hospital & Healthcare Association*,
    Civ. No. 07-1292, 2009 WL 5031334 (D. Ariz. July 14, 2009) .......................11

Page

Cases—continued:

*Olean Wholesale Grocery Cooperative, Inc.* v. *Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.) (en banc),
  *cert. denied*, 143 S. Ct. 424 (2022) ...........................................................1, 5, 6

*Shields* v. *Federation Internationale de Natation*,
  Civ. No. 18-7393, 2022 WL 425359 (N.D. Cal. Feb. 11, 2002),
  *appeal filed*, No. 23-15092 (9th Cir.)................................................................4

*Twin City Sportservice, Inc.* v. *Charles O. Finley & Co.*,
  676 F.2d 1291 (9th Cir.), *cert. denied*, 459 U.S. 1009 (1982) ..........................9

*White* v. *National Collegiate Athletic Association*,
  Civ. No. 06-999, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) .........................6

**RULE**

Fed. R. Civ. P. 23(b)(3).................................................................................................1

# INTRODUCTION

Plaintiffs' opposition underscores the need for this Court's intervention. Plaintiffs have no response to the fundamental flaw of their regression analysis: that it assumes, rather than proves, the common impact of Zuffa's allegedly anticompetitive scheme. Whether a class may be certified based on a model designed to assume common impact is an important and recurring question, as demonstrated by this Court's grant of review in *In re Google Play Store Antitrust Litigation*, No. 23-15285.

The "wage share" regression analysis used by plaintiffs' expert, Dr. Hal Singer, rests on a novel and radical theory that cannot satisfy the predominance requirement in Federal Rule of Civil Procedure 23(b)(3). Plaintiffs fail to explain how Dr. Singer's model could demonstrate antitrust impact without individualized inquiries into the factors affecting each fighter's compensation in a but-for world where Zuffa did not engage in the allegedly unlawful conduct. Plaintiffs cite as precedent *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.) (en banc), *cert. denied*, 143 S. Ct. 424 (2022), and a district-court decision from 2006, but neither case held that simply proffering a regression analysis purporting to show common impact satisfies Rule 23(b)(3).

The "foreclosure share" analysis used by Dr. Singer similarly fails to satisfy the predominance requirement. His analysis of how many fighters had 30-month contracts assumes, rather than proves, foreclosure of competition.

(1)

In response to that shortcoming, plaintiffs argue that every single UFC fighter was foreclosed from competition. But that was not the theory on which the district court relied.

Recent developments in *Google Play Store* reinforce the need for review here. The district court in that case recently excluded Dr. Singer's opinions, and this Court has ordered a limited remand for the district court to consider whether to decertify the class. In both cases, Dr. Singer made the same mistake of assuming a common response across the entire class in plaintiffs' but-for worlds. The Court should grant this petition to address that pressing question.

The issues presented here are of enormous importance. Neither the district court nor plaintiffs has offered a meaningful limit on the use of a wage-share regression analysis. Without this Court's intervention, that analysis will no doubt be invoked by plaintiffs in future cases to seek certification whenever compensation does not grow at the same rate as a company's revenue. Given the damages sought in this case—which, plaintiffs do not dispute, exceeds Zuffa's net income during the class period—it is unlikely this Court will have the opportunity to address the issues presented here absent interlocutory review. Because the district court's decision was "manifestly erroneous," presents "unsettled and fundamental issue[s] of law," and likely "sounds the death

knell of the litigation," *Chamberlan* v. *Ford Motor Co.*, 402 F.3d 952, 957-959 (9th Cir. 2005) (citation omitted), this Court should grant permission to appeal.

## ARGUMENT

### I. THE DISTRICT COURT ERRONEOUSLY CERTIFIED A CLASS BASED ON A NOVEL 'WAGE-SHARE' THEORY THAT DOES NOT SHOW COMMON INJURY

The district court's first error in certifying the class involves Dr. Singer's wage-share regression analysis. He used as his dependent variable Zuffa's athletes' compensation as a collective share of revenue. That novel theory and corresponding model cannot prove individual antitrust impact on a classwide basis, as it is incapable of demonstrating whether and to what extent any individual fighter was compensated below a competitive level.

#### A. Plaintiffs Have Not Presented A Common Method For Demonstrating Individual Antitrust Impact

1. Plaintiffs' response offers no solution to their model's central flaw: it assumes, rather than proves, a common injury. *See* Resp. 13. Using a novel approach, Dr. Singer asserted that UFC fighters' compensation did not keep pace with UFC's overall revenue growth during the class period. He then assumed that the failure to keep pace was due to allegedly anticompetitive employment contracts and claimed that UFC would have paid fighters over $1 billion more in the but-for world. But what Dr. Singer failed to do is analyze whether *individual* athletes would have earned more, less, or the same in that

3

but-for world. *See* Pet. 11-14. That is the fundamental question of antitrust impact that needs to be answered classwide. The result of Dr. Singer's "wage share" model, which merely demonstrates that the overall pool of fighter compensation did not keep up with UFC's revenue growth, is incapable of answering that question—for any fighter in the class.

Plaintiffs also cannot dispel the conflict among class members as to who would contract with Zuffa in the but-for world. *See* Resp. 14-15. Contrary to plaintiffs' contention, Zuffa argued in its opposition to class certification that plaintiffs "are seeking relief that would result in hundreds of athletes being let go by Zuffa." Dkt. 540, at 19. While plaintiffs adduce evidence that increased competition in other professional sports resulted in higher average compensation, *see* Resp. 14, for purposes of class certification, the salient point is that plaintiffs have not identified a method capable of proving, on a classwide basis, which MMA fighters would have earned less (or nothing) in the but-for world and which ones would have earned more or the same.

Plaintiffs also fail to distinguish the cases cited by Zuffa concerning intraclass conflict. *Compare* Resp. 15 *with* Pet. 12-13 (citing *Shields* v. *Federation Internationale de Natation*, Civ. No. 18-7393, 2022 WL 425359, at *6-*10 (N.D. Cal. Feb. 11, 2002), *appeal filed*, No. 23-15092 (9th Cir.); *In re NCAA I-A Walk-On Football Players Litigation*, Civ. No. 04-1254, 2006 WL 1207915,

4

at *8-*9 (W.D. Wash. May 3, 2006)). Plaintiffs argue that, in those cases, "defendants would have engaged in a beneficial transaction with some but not all class members," whereas "Zuffa *did deal* with all the class members." Resp. 15. But it is always true that a defendant "did deal" with all class members as a historical matter. The key question is what would happen in plaintiffs' but-for world. Here, as in all of the cases cited by Zuffa, the class members would be competing against one another for a share of a fixed recovery, and the defendant would be dealing with only a subset of the class. In a case claiming that all class members were underpaid by the defendant, that intraclass conflict implicates whether and to what extent members of the class were actually even injured.

  2. Contrary to plaintiffs' assertions (at 12-13), Zuffa does not contend that the district court erred by relying on a regression analysis. Instead, as explained above, the primary problem with the district court's decision is that it accepted a regression model based on a novel measure of antitrust impact designed to conceal the lack of injury to individual class members.

  Plaintiffs strive mightily to find a case relying on a regression analysis involving workers' share of revenue, rather than workers' absolute compensation. Plaintiffs contend that such a model was approved by this Court in *Olean*, *supra*, but they identify no such approval. *See* Resp. 1, 12-13. Quite to the contrary, this Court distinguished "theor[ies] requiring multiple speculative

5

steps" from the *Olean* plaintiffs' "simple one-step theory" that defendants "conspired to raise tuna prices, resulting in higher prices for all buyers." 31 F.4th at 679. This Court also distinguished that case from cases involving "unsupported assumptions." *Id.* at 666 n.9. This case presents precisely the theory that the Court distinguished in *Olean*: a novel one involving "multiple speculative steps" and "unsupported assumptions."

The only other case plaintiffs cite as precedent is *White* v. *National Collegiate Athletic Association*, Civ. No. 06-999, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006). *See* Resp. 4, 20. In that seventeen-year-old, unpublished district-court decision, the court compared financial aid for college athletes as a share of revenue with professional athletes' salary as a share of league revenue. *See White*, 2006 WL 8066803, at *5 n.4. Critically, that observation was not the basis of the court's certification of a damages class, or even the basis underlying plaintiffs' demonstration of common impact. Rather, *White* involved an alleged horizontal conspiracy amongst schools to fix grant-in-aid scholarships for student-athletes no higher than the cost of attendance. *Id.* at *1. The theory of classwide impact and plaintiffs' damages model established that absent the restraint, competition for recruits would result in schools offering grant-in-aid scholarships *greater* than the cost of attendance. None of that rested on an analysis of wage share.

6

Nor is the use of Dr. Singer's wage-share regression "standard in sports economics." Resp. 3 (emphasis omitted); *see also id.* at 20-22. Defense experts Drs. Robert Topel, Roger Blair, and Paul Oyer testified that they had never seen a published regression analysis using wage share to measure the effect of a monopsony, even though they had seen wage-share calculations used for other purposes, such as analyzing the expenses of a firm. *See* Dkt. 730, at 45-51; Dkt. 734, at 148-151; Dkt. 741, at 96. Plaintiffs also have not pointed to a published regression analysis in economics using wage share to measure the effect of a monopsony. And the statements by Zuffa and its affiliates cited by plaintiffs merely calculated the percentage of revenue that went to various costs and compared compensation levels in MMA to those in other sports. *See* Op. 54.

### B. Plaintiffs' Model Cannot Distinguish Between The Impact Of Procompetitive And Anticompetitive Conduct

Plaintiffs' model is also insufficient to support class certification because it fails to distinguish between the effects of Zuffa's lawful, procompetitive conduct and the effects of its allegedly unlawful conduct. *See* Pet. 16-17. Plaintiffs point to Dr. Singer's supplemental reports, which they contend "controlled for Zuffa's contributions to revenue, including promotional spending." Resp. 16 (emphasis omitted). But those reports do not actually control for the superiority of Zuffa's product or for higher productivity. *See* Dkt. 551-16, at 2. Further, Dr. Singer never rebutted the testimony that, as a matter of economics,

7

wage share cannot be used to distinguish competitive from anticompetitive conduct because either may result in declines in wage share. *See* Pet. 16-17. Both because plaintiffs' model cannot demonstrate individual antitrust impact on a classwide basis and because it cannot distinguish between procompetitive and anticompetitive conduct, the Court should grant permission to appeal.[*]

## II. THE DISTRICT COURT ERRONEOUSLY CERTIFIED A CLASS BASED ON A MODEL THAT ASSUMES COMMON IMPACT

As Zuffa explained in its initial petition, Dr. Singer's use of "foreclosure" share assumes anticompetitive conduct based on the length of its contracts and glosses over differences among fighters. *See* Pet. 18-19. Plaintiffs argue that 30-month contracts were necessarily exclusionary because the average length of a fighter's career in the UFC was 30 months. *See* Resp. 18. Even if that figure were accurate, it would not be of help to plaintiffs. In fact, the average length of a Zuffa athlete's professional career—rather than merely a career in one of Dr. Singer's proposed market definitions—is significantly longer. *See* Dkt. 574-51, ¶ 40. Dr. Singer's assumption that the contracts were exclusionary because they encompassed an MMA fighter's entire career thus holds no

---

[*] Plaintiffs briefly contend that the documentary and econometric evidence of a pay structure establishes impact on a classwide basis. *See* Resp. 17. But fighters "negotiate contracts individually with different promoters" and their compensation "depends on a number of individual factors, including the athlete's record, reputation, experience, and representation." Pet. 17 n.*.

water. And Dr. Singer's regression is meaningful only if foreclosure share actually reflects established exclusionary conduct; otherwise, the model cannot demonstrate that fighter compensation was lowered because of unlawful conduct.

Plaintiffs cite (at 5) this Court's decision in *Twin City Sportservice, Inc.* v. *Charles O. Finley & Co.*, 676 F.2d 1291, *cert. denied*, 459 U.S. 1009 (1982), but that case is easily distinguishable. The district court there relied not only on the "contracts of greater than ten years' duration," but also on "unreasonably long concession franchise agreements, follow-the-franchise clauses, and predatory cash loans and advances." *Id.* at 1302. By contrast, Dr. Singer used only contract length as the operative independent variable, *see* Singer Report ¶ 306, and he never established that the length he chose was anticompetitive.

To the extent plaintiffs now argue that all fighters were "foreclosed" because Zuffa's contracts were "perpetual," *see* Resp. 18, that argument is beside the point. Dr. Singer did offer an alternative model that treated all Zuffa fighters as "foreclosed" on the ground that Zuffa could permanently retain any athlete it wished. *See* Singer Report ¶ 170. But the district court relied only on the 30-month analysis in its certification decision. *See* Op. 49-50.

Plaintiffs' argument that Dr. Singer "test[ed] empirically" whether the contracts decreased fighter compensation, Resp. 18 (emphasis omitted), is ultimately circular. Foreclosure share is supposed to represent "the percentage

9

of the overall input market that [d]efendant has made unavailable to competitors through exclusionary conduct in violation of antitrust law." Op. 45 n.37. But as discussed above, plaintiffs have failed to establish that 30-month contracts were exclusionary. The regression analysis thus measures a relationship between share of revenue and lawful contracts, which renders it useless for proving classwide injury.

### III. THE DECISION BELOW SUFFERS FROM A SIMILAR FLAW AS THE CERTIFICATION DECISION IN *GOOGLE PLAY STORE*

Recent developments in *Google Play Store* underscore the need for review in this case. After certifying a class based in part on Dr. Singer's analysis of the app market, the district court excluded his opinions. This Court then granted a limited remand for the district court to consider whether to decertify the class. *See* Dkt. 123, *Google Play Store*, No. 23-15285 (Aug. 31, 2023). Although Dr. Singer's analyses of app purchasers and UFC fighters differ in some respects, *see* Resp. 19, both suffer from the same improper assumption of a common response in plaintiffs' but-for worlds. *See* Pet. 20. Dr. Singer's wage-share model is no better than the model ultimately stricken in *Google Play Store* because it was "not within accepted economic theory and literature, and is based on assumptions about the Play Store apps that are not supported by the evidence." MDL No. 21-2981, 2023 WL 5532128, at *9 (N.D. Cal. Aug. 28, 2023). Particularly now that the appeal in *Google Play Store* may soon be moot, this Court should grant interlocutory review.

## IV. THE QUESTIONS PRESENTED ARE EXCEPTIONALLY IMPORTANT AND WARRANT IMMEDIATE REVIEW

Plaintiffs seek to limit the effect of their novel theory by arguing that it would be limited to sports because athletes have a significant effect on revenues. *See* Resp. 3, 22. But there is no reason why sports are unique in this regard, especially compared to industries with other "star" employees or contractors. And Dr. Singer has tried unsuccessfully to use a wage-share analysis in a case brought by nurses. *See Johnson* v. *Arizona Hospital & Healthcare Association*, Civ. No. 07-1292, 2009 WL 5031334, at *8-*9 (D. Ariz. July 14, 2009); *see also* Chamber of Commerce Br. 8-10.

Plaintiffs do not dispute that the damages they seek far exceed Zuffa's net income during the class period. *See* Pet. 22-23. They attempt to gin up a conflict between Zuffa's request for additional discovery and the reality that class certification imposes significant pressure on Zuffa to settle. *See* Resp. 23. But no such conflict exists. The pressure to settle stems from the immense damages that could be awarded after a trial, not the costs of discovery, which would exist even in the absence of class certification. Because the financial stakes make it unlikely that this Court will have another opportunity to address the questions presented, immediate review is warranted to resolve the conflict created by the district court and avoid a sea change in the law of antitrust class actions.

## CONCLUSION

The petition for permission to appeal should be granted.

Respectfully submitted,

s/ Kannon K. Shanmugam

| | |
|---|---|
| GREGORY G. GARRE<br>CHRISTINE C. SMITH<br>LATHAM & WATKINS LLP<br>  555 Eleventh Street, N.W.,<br>    Suite 1000<br>  Washington, DC 20004 | KANNON K. SHANMUGAM<br>WILLIAM A. ISAACSON<br>BRIAN M. LIPSHUTZ<br>KATHERINE FANG<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>  2001 K Street, N.W.<br>  Washington, DC 20006<br>  (202) 223-7300<br>  kshanmugam@paulweiss.com |

CHRISTOPHER S. YATES
AARON T. CHIU
LATHAM & WATKINS LLP
  505 Montgomery Street, Suite 2000
  San Francisco, CA 94111

DANIELLE J. MARRYSHOW
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  1285 Avenue of the Americas
  New York, NY 10019

SAMIR DEGER-SEN
LATHAM & WATKINS LLP
  1271 Avenue of the Americas
  New York, NY 10020

J. COLBY WILLIAMS
CAMPBELL & WILLIAMS
  710 South Seventh Street
  Las Vegas, NV 89101

SEPTEMBER 12, 2023

# CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

    I, Kannon K. Shanmugam, a member of the Bar of this Court and counsel for petitioner Zuffa, LLC, certify, pursuant to Federal Rules of Appellate Procedure 32(a) and 32(c), and Ninth Circuit Rules 32-1 and 32-3, that the attached Reply of Petitioner in Support of Petition for Permission to Appeal Order Granting Class Certification Pursuant to Fed. R. Civ. P. 23(f) is proportionately spaced, has a typeface of 14 points or more, and contains 2,596 words.

s/ Kannon K. Shanmugam  
KANNON K. SHANMUGAM

SEPTEMBER 12, 2023