No. 23-80074

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ZUFFA, LLC,
D/B/A ULTIMATE FIGHTING CHAMPIONSHIP AND UFC,

*Defendant-Petitioner*,

v.

CUNG LE, ET AL.,

*Plaintiffs-Respondents*.

On Petition for Permission to Appeal from the United States District
Court for the District of Nevada (No. 15-cv-1045)
The Hon. Richard F. Boulware, J.

**SUR-REPLY OF RESPONDENTS IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL FROM ORDER GRANTING CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)**

JOSHUA P. DAVIS
BERGER MONTAGUE PC
*505 Montgomery Street, Suite 625*
*San Francisco, CA 94111*

ERIC L. CRAMER
BERGER MONTAGUE PC
*1818 Market St., Suite 3600*
*Philadelphia, PA 19103*

JEROME K. ELWELL
WARNER ANGLE HALLAM
JACKSON & FORMANEK, PLC
*2555 E. Camelback Rd., Suite 800*
*Phoenix, AZ 85016*

RICHARD ADAM KOFFMAN
BENJAMIN D. BROWN
COHEN MILSTEIN SELLERS &
TOLL, PLLC
*1100 New York Ave., N.W., Suite 500*
*East, Tower*
*Washington, DC 20005*

JOSEPH R. SAVERI
KEVIN E. RAYHILL
JOSEPH SAVERI LAW FIRM, INC.
*601 California St., Suite 1000*
*San Francisco, CA 94108*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................ ii

I. INTRODUCTION ...........................................................................................1

II. ARGUMENT ..................................................................................................2

III. CONCLUSION..............................................................................................11

Certificate of Compliance .......................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re NCAA I-A Walk-On Football Players Litig.*,
  2006 WL 1207915 (W.D. Wash. May 3, 2006)............................................. 4, 5, 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F. 4th 651 (9th Cir.).................................................................... 2, 3, 5, 7, 9

**Rules**

Fed. R. App. P. 32(a)(5) and (6) ............................................................................ 13
Fed. R. App. P. 32(f)............................................................................................. 13
Fed. R. Civ. P. 23(f) ................................................................................. 1, 2, 3, 11
Fed. R. Evid. 702 ................................................................................................... 6

## I. INTRODUCTION

Zuffa's petition under Rule 23(f) (the "Petition") and its unauthorized reply brief (the "Reply Brief") make promises they cannot keep. The briefs mischaracterize the record below, assert an argument that Zuffa waived, and ignore the district court's findings.

Empty promises generally make for ineffective advocacy. But that is not necessarily true if a party's primary aim is delay. It may then be willing to sacrifice its credibility to protract the appellate process.

Zuffa revealed below that it desperately wants to delay the trial tentatively scheduled for April 2024. The district court has indicated it will await this Court's resolution of the Rule 23(f) procedure before it entertains the remaining pre-trial matters and commences trial. So Zuffa will achieve a significant tactical victory if it muddies the waters enough to slow this Court's Rule 23(f) decision. Its tactical victory will be far greater if this Court grants Zuffa's Petition. That is so even though Zuffa's appeal would ultimately prove meritless.

This Court should decline Zuffa's Rule 23(f) gambit, deny its Petition, and permit the district court to hold the trial that plaintiffs-respondents ("Plaintiffs") have sought for almost a decade.

1

## II. ARGUMENT

Zuffa's Rule 23(f) Petition alternately ignored and mischaracterized the record below, and its Reply Brief adopts the same strategy.

*Proof that Zuffa's Conduct Suppressed Fighter Compensation.* Zuffa asserted in its Petition that the regression of Plaintiffs' expert, Dr. Hal Singer, assumed rather than showed that Zuffa's anticompetitive conduct artificially suppressed the compensation of class members ("fighters"). Petition 2, 18-19. Plaintiffs' Answering Brief explained that Dr. Singer *demonstrated* the cause of Zuffa's suppressed pay was its anticompetitive conduct, not any procompetitive conduct in which Zuffa may have engaged, such as event promotion. Answer 16-18. More importantly, the district court *found* that was so. Order on Motion to Certify Class ("Order") 50-51, 63-67, 70 (ECF 839). That finding is reviewed for clear error. But Zuffa's Reply does not engage the district court's reasoning. It merely reasserts Zuffa's position. *See* Reply 1, 7-8. Repetition is not argument. It cannot establish clear error.

*Harm to Individual Class Members.* Zuffa also contended in its Petition that Dr. Singer's regression assesses the harm only to the class as a whole, not to individual fighters. That too is wrong. The Answering Brief explained that Dr. Singer used the same common methodology that this Court approved *en banc* in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651

2

(9th Cir.) (*en banc*), *cert. denied*, 143 S. Ct. 424 (2022), to demonstrate individual injury to over 99% of class members. Answer 1, 8-9, 11-15. The district court found that analysis reliable. Order 12-14, 45-51, 70. Zuffa ignores Dr. Singer's reasoning and the district court's finding, merely rehashing arguments from its Petition. *See* Reply 1, 3-4. Again, that provides no basis to conclude the district court committed clear error.

*A New and Unsupported Argument about an Alleged Conflict of Interest.* The Answering Brief pointed out that Zuffa raised a new argument on appeal about a supposed conflict of interest between members of the class. For the first time in its Rule 23(f) Petition, Zuffa asserted—without any citation to the record below—that eliminating its anticompetitive conduct would benefit some class members and harm others. Petition 12-14, 21. One reason that argument fails is because Zuffa waived it. Another is that, as noted in the previous paragraph, Dr. Singer showed and the district court *found* that Zuffa's conduct harmed *all* class members. They all would have done better if not for Zuffa's antitrust violation.

In response, Zuffa's cites to a fragment from one sentence in the record below in which it had asserted that Plaintiffs "'are seeking relief that would lead to hundreds of athletes being let go by Zuffa.'" Reply 4 (quoting Dkt. 540, at 19). But that fragment does *not* establish that Zuffa argued that some fighters would have been paid more and others less without the anticompetitive conduct. Nor does it

3

show that the district court's finding that Zuffa's anticompetitive conduct harmed *all* class members, Order 63-67, was clear error.

Worse yet for Zuffa, the passage it cites was speculating—inaccurately—about a potential tension between Plaintiffs' request for damages and their request for injunctive relief. Dkt. 540, at 19. But the district court's Order certified a class only for purposes of damages, not for injunctive relief, Order 72-74, so Zuffa's point is not only wrong but also irrelevant to its Petition.

Zuffa also tries to rehabilitate the case law it cited in support of its waived conflict argument. Reply 4-5. Plaintiffs pointed out that in all the cases on which Zuffa relied, district courts had concluded that only *some* class members would have benefited without the challenged conduct, others would not have, and the plaintiffs could not distinguish between the two groups. Answer 15.

*In re NCAA I-A Walk-On Football Players Litig.*, 2006 WL 1207915 (W.D. Wash. May 3, 2006), is an example. The plaintiffs there challenged as anticompetitive concerted conduct among schools to limit scholarships and related aid. The difficulty was that under the plaintiffs' own theory, only some class members would have received scholarships absent the challenged conduct, and the district court determined that the plaintiffs had no way of identifying them. *Id.* at *7-*9. Moreover, if the challenged conduct had not occurred, some beneficiaries would have attended different schools based on the financial packages made

4

available to them, and there was no way to know which schools they would have attended. *Id.* at *7. *That* is why the district court there noted that the defendant "did not deal" with all class members. Answer 15.

Zuffa is thus incorrect when it asserts in its Reply that "it is always true that a defendant 'did deal' with all class members as a historical matter.'" Reply 6. In the cases it cites, the defendants did not. In contrast, here all the class members *did* in fact contract with, and receive compensation from, Zuffa. And, again, the district court found that *all* would have received *greater* compensation if not for Zuffa's anticompetitive conduct. The cases Zuffa cites are therefore inapposite.

*Olean as Governing this Litigation*. Zuffa attempts to distinguish the Ninth Circuit precedent that governs this action, *Olean*. Zuffa does so by asserting that here Dr. Singer relied on "multiple speculative steps" and "unsupported assumptions" while the plaintiffs in *Olean* did not. Reply 6. But Zuffa never responds to the point that Dr. Singer employed *the very same econometric methodology* that *Olean* approved for using common evidence to establish classwide impact on a transaction-by-transaction and class-member-by-class-member basis. Answer 9, 12-13. Zuffa fails to distinguish *Olean* in any meaningful way.

*Wage Share as Standard in Sports Economics*. Zuffa's Reply Brief retreats from the claim in its Petition that use of wage share in assessing professional

5

athlete compensation is unusual. Reply 7. The Reply Brief makes the much narrower claim that wage share has not been used as the dependent variable in a regression to assess the effects of changes in monopsony power in certifying a class in an antitrust case. *Id.*[1]

This unacknowledged shift in Zuffa's position is evident in its discussion of case law. Zuffa claimed in its Petition that it was unaware of any case that used wage share in certifying an antitrust case for class treatment. Petition 20-21. Plaintiffs pointed out in their Answering Brief that they had cited just such a case below and that Zuffa had either missed it or ignored it. Answer 3-4, 20. Zuffa's Reply Brief tries to rewrite that history, claiming that Plaintiffs "strive mightily to find a case relying on a regression analysis involving worker's share of revenue" to prove common impact. Reply 5; *see also id.* at 7. That is a change of topic.

Further, Zuffa's new argument in its Reply Brief is no more compelling than the one it made in its Petition. The Reply Brief suggests for the first time that Plaintiffs have the burden to identify a very precise district court opinion: one that certified a class in an antitrust case by using wage share as the dependent variable

---

[1] Zuffa took the same tack below, first challenging *any* use of wage share and then admitting its use is proper when economists "attempt to analyze the impact of an observed *change* in monopsony power," the relevant task here. EFC No. 524 (Zuffa, LLC's Motion to the Testimony of Dr. Hal Singer Under Fed. R. Evid. 702 and *Daubert* (February 16, 2018) at 2, 15).

in a regression to assess the effects of monopsony power on compensation. Reply 7. Plaintiffs have no such burden.

What matters is that use of wage share to analyze pay to professional athletes is standard, Answer 3-4, and so is use of a regression to show common impact. *Id*. at 8-9, 12-13 (applying *Olean*). Dr. Singer combined the two—wage share and a regression—in a particularly rigorous analysis that supports class certification. Order 44-51, 70. Moreover, as Dr. Singer pointed out, use of wage share as the dependent variable in a regression model is routine in the labor economics literature. Plaintiffs' Consolidated Brief in Opposition to Zuffa, LLC's Motion to Exclude the Testimony of Drs. Hal Singer and Andrew Zimbalist (April 6, 2018) (ECF 534) at 11-12. The district court found that Dr. Singer's analysis, was standard, reliable and persuasive. Order 12-14, 45-51, 70. Zuffa does not engage Dr. Singer's analysis, much less does it show that the district court's findings were clear error.

*Pay Structure as Establishing Common Impact*. Zuffa's Petition and its Reply also suffer from a fatal omission. Plaintiffs' Answering Brief pointed out the district court's findings that (1) the documentary evidence of a pay structure sufficed *on its own* to establish common impact, Answer 17 (citing Order 64), and (2) Dr. Singer's statistical analyses reliably confirmed that pay structure. *Id*. (citing Order 65). Those findings by themselves warrant affirmance of the district court's

7

class certification decision. They too are subject to review for clear error. Yet Zuffa ignores them.

*Dr. Singer's Analysis of Foreclosure of the Market from Competitors*. Zuffa's Reply contests Dr. Singer's analysis of foreclosure. It asserts that Zuffa's contracts that foreclosed rivals did not last for most or all an average fighter's career, as Dr. Singer showed. Reply 8. Zuffa supports its position by citing some contested (and misleading) evidence without explanation. But the district court *found* that Zuffa's contracts lasted for most of a typical fighter's career. Order 35. Zuffa provides no basis to conclude that was clear error.

Zuffa also asserts that Plaintiffs "now" argue that the contracts foreclosed competitors in part because they were in effect perpetual. Reply 9. As the Answering Brief explained, Zuffa coerced the fighters it wanted to retain to sign new contracts before their old ones expired. Answer 7 (citing Order 35-39, 57). If Zuffa is suggesting Plaintiffs did not make that argument before, it is wrong. Plaintiffs proved and the district court *found* that Zuffa's "contracts [were] effectively perpetual." Order 33, 35-39, 57. Zuffa tries to sidestep that finding by implying that the district court relied only on the express length of the contracts in assessing foreclosure. *See* Reply 9. But that is untrue—the district court relied on *both* the express length of the contracts and Zuffa's use of coercion to extend the contracts for as long as it wanted to do so. *See* Order 35-39.

8

Plaintiffs also noted Dr. Singer confirmed empirically that he had properly measured the share of the market that Zuffa had foreclosed from competitors. Answer 18 (citing Order 46-47, 50-51). He did so in part by analyzing whether his measure of foreclosure share explained variations in the compensation that Zuffa paid its fighters. *Id*. at 13 (citing Order 50, 70). He found that it did, and his results were statistically significant. Order 46, 50. Zuffa attempts to dismiss that compelling finding by labeling it "ultimately circular." Reply 9. But Zuffa never explains what it means by that phrase. Nor does it offer a theory as to how Dr. Singer's model could predict variations in Zuffa's pay so effectively if it did not capture accurately the portion of the market from which Zuffa excluded its potential rivals.

*Google Play Store*. Zuffa's Reply doubles down on the fiction that *Google Play Store* and this litigation have something in common other than that Dr. Singer serves as an expert in both cases. Reply 1, 10. They do not. In arguing that they do, Zuffa offers only conclusory statements, not any reasoning. *Id*. As Plaintiffs explained in their Answering Brief, Dr. Singer's regression analysis here used a common methodology to test for impact on a class-member-by-class-member basis in the way *Olean* approved. Answer 9, 12-13. That methodology enabled Dr. Singer to confirm impact to over 99% of the class, well above the plaintiffs' showing of harm to slightly over 94% of the class in *Olean*. The relevant concern

9

in *Google Play Store* was that Dr. Singer did *not* perform the same sort of analysis. Nothing in that case should cast doubt on the district court's order certifying a class in this action.

*A Narrow Class Certification Decision*. Zuffa offers two reasons an interlocutory appeal of class certification is important here. First, it presents a watered down version of a claim it made in its Petition. There, it asserted that the district court's order could lead plaintiffs to use wage share in a flood of cases. Its Reply largely abandons that untenable assertion, Reply 11, as the district court's Order supports use of wage share only for professional athletes. Order 54. The district court's Order was narrow. It is relevant to very few antitrust claims brought by workers, which form only a very small percentage of antitrust cases.

*The "Net Income" Shell Game*. Second, Zuffa makes a cynical claim. It suggests that the damages Plaintiffs seek exceed Zuffa's "net income" during the class period, putting great pressure on Zuffa to settle before trial. Reply 11. But Plaintiffs showed below that Zuffa's "net income" is not a meaningful figure.[2] Zuffa at the time was a privately held company owned by a small handful of

---

[2] Plaintiffs' Motion for Class Certification (ECF 518) at 16 (citing Rebuttal Report of Guy A. Davis, CPA, DIRA, CDBV, CFE at C-D & Table 1; Expert Report of Guy A. Davis, CPA, DIRA, CDBV, CFE (August 31, 2017) at C, D, E.2, E.3, E.5, F & Tables 3, 7-13, 17; Rebuttal Expert Report of Hal J. Singer, Ph.D. (January 12, 2018) ¶¶ 208-09; Expert Report of Andrew Zimbalist (August 30, 2017) ¶¶ 135-38).

10

investors. It calculated its "net income" by deducting all sorts of costs that benefited its owners and top executives—including for private jets that they used as personal toys and to service debt that enabled them to extract many hundreds of millions of dollars in dividends.[3] Conventional wisdom is that only a fool accepts compensation in net profits from a movie because "Hollywood accounting" ensures that there never are any. The same is true for the accounting of "net income" on which Zuffa relies in claiming it cannot afford to risk a trial here.

### III. CONCLUSION

Zuffa's arguments in support of its Rule 23(f) Petition are a mirage. They are designed to lure this Court into a costly and pointless journey, but it is already clear that there is nothing real there. This Court should deny the Petition, saving the time of this Court and the parties and avoiding unnecessary delay.

September 22, 2023

By: */s/ Joshua P. Davis*
Joshua P. Davis
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

---

[3] *Id.*

11

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net

Richard A. Koffman
Benjamin Brown
COHEN MILSTEIN SELLERS &
TOLL, PLLC
1100 New York Ave., N.W., Suite 500
East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com

Joseph R. Saveri (*pro hac vice*)
Kevin E. Rayhill (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

*Attorneys for Respondents-Plaintiffs and the Certified Class*

12

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** 23-80074

I am the attorney or self-represented party.

**Ninth Circuit Case Number:** 23-80074

**This brief contains 2,579 words,** excluding the items exempted by Fed. R. App. P. 32(f), in compliance with Civ. R. 5. The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6) because this briefs has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 and is 14-point font, Times New Roman.

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Dated:** September 22, 2023

*/s/ Joshua P. Davis*
Joshua P. Davis
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net